**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | |
| | : | **No. 24-cr-349-2 (RC)** |
| | : | |
| **ANDRE RUSHING,** | : | |
| **also known as "Dre,"** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the Interim United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Andre Rushing (hereafter, the "Defendant" or "Defendant Rushing").

On March 17, 2025, the Defendant pleaded guilty to Counts One and Two of the Indictment, charging him with Carjacking and Aiding and Abetting, in violation of 18 U.S.C. § 2119(1) and 2 (Count One), and Brandishing a Firearm in Furtherance of a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 (Count Two). Sentencing is currently scheduled for August 1, 2025.

Pursuant to the Plea Agreement, the United States agreed to cap its allocution at the bottom of the applicable guidelines range as ultimately determined by the Court at the time of sentencing. *See* ECF No. 35, Plea Agreement ¶ 5. Accordingly, for the reasons herein, and based on the 18 U.S.C. § 3553(a) factors, the United States requests that the Court sentence the Defendant to a 121-month term of incarceration to be followed by five years of supervised release, as recommended by the U.S. Probation Office.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As detailed below, in March 2023, Defendant Rushing and his co-defendants engaged in a rampant, unrelenting spree in which they committed multiple armed carjackings and robberies across Washington, DC, which ultimately culminated in his arrest in Fairfax County on March 30, 2023. In addition to the carjacking offense he has pleaded guilty to, Defendant Rushing has admitted to perpetrating three additional carjackings and robberies during this time period. In total, the Defendant victimized at least six people in four separate offenses in March 2023. *See* ECF No. 36, Statement of Offense ("SOF").

The spree only ceased when the Defendant and his co-defendants were brought into custody in Fairfax County, Virginia, on March 30, 2023, after fleeing police in a carjacked vehicle. Although the Defendant was ultimately convicted for his possession of a firearm in relation to this incident, it did not deter him from continuing his criminal activity, this time with a different group. As detailed below, following his arrest and conviction in Fairfax County, Virginia, he committed at least one additional carjacking in D.C. on August 15, 2023. Indeed, his criminal conduct only came to an end because he was arrested that same day and charged in D.C. Superior Court case 2023 CF3 5670; he has remained in custody since.

On August 1, 2024, Defendant Rushing was charged by indictment with one count of Federal Carjacking, in violation of 18 U.S.C. § 2119(1), based on his perpetration of a carjacking on March 6, 2023, and an associated count of 18 U.S.C. § 924(c)(1)(A)(ii) for brandishing a firearm during this carjacking. The Defendant was already in federal custody serving a sentence for the August 15, 2023 carjacking charged in D.C. Superior Court case 2023 CF3 5670.

The offenses the Defendant admitted to perpetrating as part of his guilty plea are described chronologically below, along with the facts relating to his arrest in Fairfax County on March 30, 2023.

2

     i.       *March 6, 2023 Carjacking at 1501 Maryland Avenue NE (Counts One and Two)*

On March 6, 2023, at approximately 9:20 pm, Defendant Rushing, along with Defendant Roach, perpetrated an armed carjacking against a male victim ("V-1") as he approached a Pizza Hut located at 1501 Maryland Avenue. Defendant Rushing pointed a handgun at V-1 and demanded V-1's keys and phone as Defendant Roach stood to the side pointing a loaded long-style gun at V-1. Defendants Roach and Rushing subsequently fled in V-1's vehicle, which was later recovered unoccupied in a rear parking lot of 434 37th Place SE on March 13, 2023, and a third suspect fled in the vehicle the defendants had arrived in.

Five hours prior to the carjacking, at approximately 4:30 pm, Defendant Rushing posted an Instagram story to his account showing a group of individuals (including Defendants Roach and Rushing) who appear to be holding firearms. As depicted in Figures A and B below, Defendant Roach appears to be holding a long-style gun consistent with the firearm depicted in the surveillance video of the carjacking (and described by V-1), and Defendant Rushing is holding a handgun with an extended magazine.

 

*Figure A: Still shots of suspects taken from surveillance of March 6, 2023 carjacking*

 



*Figure B: Defendant Roach (L) and Defendant Rushing (R)*

The following day, on March 7, 2023, Defendant Rushing was arrested for gun possession in the basement laundry room of a building on the 300 block of Anacostia Road SE a few feet away from a loaded handgun with an extended magazine, which was located behind a washing machine.

Approximately 15 minutes prior to his arrest on March 7, 2023, Defendant Rushing broadcasted an Instagram Live video from Defendant Roach's Instagram account; in the video, he appeared to be holding a handgun with an extended magazine and a long-style gun is visible on the mattress behind him, as depicted in Figure C below.

 

*Figure C: still shots of Defendant Rushing taken from March 7, 2023 Instagram Live video*

The firearm recovered during Defendant Rushing's March 7, 2023 arrest was a handgun with a Glock Inc. slide and "ghost gun" lower component, containing a 31-round capacity magazine and loaded with 17 9mm rounds of ammunition, including one in the chamber, as depicted in Figure D below:



*Figure D: firearm recovered during March 7, 2023 arrest of Defendant Rushing*

  *ii. March 16, 2023 Robbery at 3911 Benning Road NE*

On March 16, 2023, at approximately 3:05 pm, the Defendant perpetrated an armed robbery at 3911 Benning Road NE in Washington, DC. Specifically, Defendant Rushing and Defendant Roach approached a male victim ("V-2"), who was returning to his vehicle with food he was delivering on behalf of his employer, and threatened V-2 with a gun, demanding his property. They took V-2's phones, $200 in U.S. currency, and the food V-2 was delivering. The Defendants then fled in a black Toyota RAV-4 that had been carjacked the day prior.

  *iii. March 17, 2023 Robbery and Assault*

The following day, on March 17, 2023, at approximately 9:34 am, Defendants Rushing and Roach perpetrated another armed robbery at 303 Anacostia Road SE in Washington, DC. Specifically, Defendant Rushing and Defendant Roach followed a male victim ("V-3"), who was

doing repairs inside the apartment, into the unit. Defendant Roach then pointed a handgun with a laser beam at V-3 and demanded his property. When V-3 did not comply, Defendant Roach then pistol whipped him with the handgun, causing V-3 to briefly lose consciousness. Defendant Roach then took V-3's cellphone and housekeys. Defendant Roach then approached the two other male victims who were working in the apartment ("V-4" and "V-5"); V-4 gave his keys and phone to Defendant Roach, but Defendant Roach rejected V-4's phone after leaving his latent fingerprint on the face of the phone. When V-5 did not have any property, Defendant Roach hit V-5 in the head with the handgun and Defendant Rushing kicked V-5 in the head and shoulder area. Defendants Roach and Rushing then fled with the victims' property.

> iv. *March 26, 2023 Carjacking at 3820 Minnesota Avenue NE (Citgo Gas Station) (Counts Five and Six)*

The following day, on March 26, 2023, at approximately 7:48 pm, Defendants Rushing and Roach perpetrated an armed carjacking at 3820 Minnesota Avenue NE in Washington, DC, where, armed with firearms, they approached a male victim ("V-6"). Defendant Roach pointed a gun at V-6 and Defendant Rushing took approximately $100 in U.S. currency and V-6's wallet from him. Defendants Roach and Rushing then fled in V-6's vehicle, a maroon Chevrolet Impala.

> v. *March 29, 2023 Audi Carjacking & March 30, 2023 Attempt to Flee and Arrest*

The following day, on March 29, 2023, in a series of events that would ultimately culminate in the arrest of Defendants Rushing, Roach, and Armstrong in Fairfax County, Virginia, another individual ("M.B.") reported that he had been the victim of an armed carjacking in Capitol Heights, Maryland in which his vehicle, a 2014 gray Audi Q5, had been taken at gunpoint.

The following day, on March 30, 2023, at approximately 2:15 pm, Fairfax County Police Department located M.B.'s carjacked Audi in a parking garage of Tyson's Mall and set up surveillance of the vehicle. Surveillance video showed three individuals previously exiting the

vehicle and entering the mall. At approximately 3:15 pm, law enforcement observed the three individuals returning to the parked Audi and attempted to stop them. Although Defendant Armstrong was apprehended inside of the parking garage, Defendants Roach and Rushing fled out of the parking garage in the carjacked Audi onto the 8000 block of Leesburg Pike. After the carjacked Audi became stuck in traffic, Defendant Roach, who was driving, attempted to escape apprehension by forcing the vehicle through several civilians' vehicles that were also stopped in traffic, causing damage to numerous vehicles. Defendant Roach also attempted to reverse the carjacked Audi and struck a Fairfax County police vehicle before law enforcement officers were ultimately able to surround and stop the vehicle. While Defendant Roach fled on foot, Defendant Rushing, who has been sitting in the front passenger seat, was arrested at the scene of this crash. In addition to the handgun recovered from Defendant Roach's person at the time of his arrest, another loaded handgun was located inside of the glove box of the carjacked Audi in front of where Defendant Rushing was sitting.

On May 31, 2023, Defendant Rushing pleaded guilty in Fairfax County, Virginia, to carrying a concealed weapon in relation to the gun recovered from the Audi's glove box. That same day, he was sentenced to a suspended sentence of 60-days incarceration.

## II.    LEGAL STANDARD

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant,

and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
   a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) To afford adequate deterrence to criminal conduct;
   c) To protect the public from further crimes of the defendant; and
   d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
   a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i) Issued by the Sentencing Commission . . . ; and
      ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
   a) Issued by the Sentencing Commission . . . and
   b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 551 U.S. 338, 347 (2007).

### III.    GUIDELINES CALCULATION

#### A.  Total Offense Level

With respect to Count One of the Indictment, the base offense level for a violation of 18 U.S.C. § 2119(1) is governed by U.S.S.G. § 2B1.3. *See* ECF No. 58, Presentence Investigation Report ("PSR") ¶ 30. As detailed in the PSR and the Plea Agreement, the adjusted offense level is 22. PSR ¶ 37. After adjustments for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), the final offense level for Count One is 19. PSR ¶ 42.

As to Count Two, the applicable guideline sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) is governed by U.S.S.G. § 2K2.4(b). PSR ¶ 43.

#### B.  Criminal History Category

The U.S. Probation Office calculates the Defendant to have six criminal history points, which places him in Criminal History Category III. *See* PSR ¶ 47.

#### C.  Sentencing Guidelines Range

For Count One, a final offense level of 19 and Criminal History Category III results in a guidelines range of 37−46 months of incarceration, 1 to 3 years of supervised release, and a fine range of $25,000 to $250,000. *See* U.S.S.G. §§ 5D1.2(a)(2) and 5E1.2(c)(3); PSR ¶ 93, 96. Pursuant to U.S.S.G. § 2K2.4, the guidelines range for Count Two is the minimum term of imprisonment set by statute, here, 84 months of incarceration, which shall be imposed consecutively to the sentence imposed on Count One and any other sentence of imprisonment, and 2 to 5 years of supervised release. PSR ¶ 92, 93, 100. As a result, the Defendant's aggregate guidelines sentencing range for Counts One and Two is 121–130 months of incarceration. *See* ECF No. 59 ("Sentencing Recommendation"); PSR ¶ 93.

IV.    **DISCUSSION AND SENTENCING RECOMMENDATION**

Pursuant to the terms of the Plea Agreement, the United States requests that the Court sentence the Defendant to a term of 121 months' (10.1 years) incarceration, to be followed by five years of supervised release. The United States further requests that any sentence imposed on Count One run consecutive to his undischarged term of imprisonment from his D.C. Superior Court robbery conviction described below. *See* PSR ¶ 93a; U.S.S.G. § 5G1.3(d). Under the totality of circumstances, including the nature and seriousness of the Defendant's conduct and his history and characteristics, the United States submits that such a sentence of incarceration serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

A.    <u>Nature And Circumstances of The Offense</u>

As described in detail in the Factual Background, the nature and circumstances of the Defendant's numerous offenses warrants a significant sentence. First and foremost, the Defendant's spree of violent crimes have left at least six victims with trauma that will likely follow them for the rest of their lives. Many victims reported that they continue to feel unsafe in their communities more than two years after they were victimized. Three of these victims were at work, trying to do their jobs at an apartment construction site, when the Defendant targeted them, assaulted them, and stole their property. These were victims that worked hard to provide for themselves, and the Defendant put them in fear for their lives to benefit himself.

The Defendant's arrest on March 7, 2023, with a loaded firearm that had a bullet in the chamber and a half-full extended magazine attached to it, further evinces his deadly intent in the charged incident and others. Despite this brush with law enforcement and his firearm being seized, he did not cease his violent conduct. One week later, he was committing violent robberies again with Defendant Roach. Notably, all of the other firearms recovered to date in relation to this

investigation, including the two firearms recovered in Fairfax County on March 30, 2023, were loaded. Indeed, the gun Defendant Roach possessed on March 30, 2023, also had a "switch" on it, rendering the firearm fully automatic and highly dangerous.

Each incident on its own has a devastating impact on a victim and demonstrates the Defendant's extreme disregard for human life, and the aggregate harm on Defendant Rushing's victims, particularly in such a short period of time, is unconscionable. Accordingly, a sentence of 121 months' incarceration is appropriate, in light of the devastating consequences of these offenses to the victims, and to the District and surrounding areas.

**B. History and Characteristics**

The Defendant's extensive criminal history involving three convictions or adjudications, PSR ¶ 44−46, and his history of additional uncharged violence all support a significant sentence of incarceration.

a. *Criminal History*

In addition to the conduct articulated in the PSR at paragraph 44 and his conduct on March 30, 2023, as described above, the Defendant was also convicted of perpetrating another carjacking less than three months after pleading guilty to firearms possession in Fairfax County. Specifically, on August 15, 2023, the Defendant, with another individual, approached a female victim who had exited her car to adjust the car seat in her back seat and asked her where the keys were. The Defendant then went into the female victim's purse and took her keys, and him and the other individual fled in the female victim's car. The Defendant was identified in this case in part because of an Instagram post of the stolen vehicle with the hashtag "noigdre" on the photo, referring to the Defendant's nickname of "Dre." PSR ¶ 46. The Defendant ultimately pleaded guilty to robbery and was sentenced to 66 months of incarceration and three years of supervised release in that case, a sentence he is currently serving.

12

b. *History of Violence & Gun Possession*

In addition to the Defendant's convictions and adjudications, and the crimes he admitted to in this case as part of his plea, Defendant Rushing has been implicated in numerous other acts of violence during this same time period. Specifically, although he was not charged, Defendant Rushing was also identified as a perpetrator of an additional carjacking that occurred on February 7, 2023, and to which Defendant Roach admitted to as part of his plea. *See* ECF No. 33, Roach Statement of Offense ("SOF"). In that incident, on February 7, 2023, at approximately 9:00 pm, the Defendant, with Defendant Roach, carjacked a male victim who was putting air in his vehicle tires, in a parking lot located at 350 G Street SW in Washington, DC. One assailant hit the victim seven to eight times in his head, pulled the victim away from his vehicle, and got into the driver's side of the vehicle, where he was joined by two others. After the victim's vehicle was recovered by law enforcement less than two hours later, the Defendant's DNA was identified on swabs of the interior of the vehicle. PSR ¶ 22a−b.

Additionally, messages from Defendant Armstrong implicate Defendant Rushing in other carjackings and shootings. For example, on March 26, 2023, Defendant Armstrong messaged Defendant Roach early in the morning, at 12:20 am, stating: "I jus got a car to" "me n Dre," and followed up one minute later stating "tryna get somebody at the bank." At around 2:00 am, Defendant Armstrong messaged another Instagram user that he is waiting for "roach" and "Dre" to "go get some money" "den up the street" to "spin again," again implying an intention to commit shootings together. At 3:23 am, Defendant Armstrong explained to the same person that "we just went up there" and "hit at" "3 n[****]s." When the other person asks, "did they fall," Defendant Armstrong responded, "yeah got back up quick es." When asked who he was with, Defendant Armstrong responded, "always gon 3," to which the other person responds, "You roach Dre," to

13

which Defendant Armstrong then responds "yeah." Defendant Armstrong follows up with a second message stating "Bouta go get me some more eggs." As previously noted, the United States believes that these references (specifically, to "spin" and to "eggs") are coded discussions regarding shooting and bullets.

The Defendant has demonstrated a pattern of violent, criminal conduct, both with his co-defendants and others. Consequently, Defendant Rushing's history and characteristics, too, weigh heavily in favor of a significant sentence.

### C.  <u>The Need for the Sentence to be Imposed</u>

The sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2). The United States respectfully submits there is a significant need to deter the persistent and violent conduct in this case, both for this Defendant and for others. Additionally, a significant sentence of incarceration would protect the public from further crimes of the Defendant. Under the totality of the circumstances, a 121-month sentence of incarceration serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### D.  <u>Other Factors</u>

Such a sentence would also give the Defendant significant time to pursue further educational and vocational training and participate in other programs that will hopefully assist him in not recidivating upon release. The recommended sentence also appropriately reflects that the Defendant's encounters with the criminal justice system have, to date, not adequately deterred him from engaging in the conduct to which he ultimately pleaded guilty in the present case.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the United States recommends that the Defendant, Andre Rushing, be sentenced to 121 months' incarceration to be followed by a term of five years' supervised release.

Respectfully Submitted,

JEANINE FERRIS PIRRO
INTERIM UNITED STATES ATTORNEY


By:     /s/ *Gaelin Bernstein*
        GAELIN BERNSTEIN
        N.Y. Bar No. 6081079
        Trial Attorney
        ANDREA DUVALL
        A.R. Bar Number 2013114
        Assistant United States Attorney
        United States Attorney's Office
        601 D Street, NW
        Washington, DC 20530
        Phone: (202) 252-6743
        Email: Gaelin.Bernstein2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, I caused a copy of the foregoing to be served on counsel of record via electronic filing.

/s/ *Gaelin Bernstein*
GAELIN BERNSTEIN
Trial Attorney

16